# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
May 6, 2014 Session

## GUY GRAVES v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C11229      Donald H. Allen, Judge**

---

**No. W2013–01288-CCA-R3-PC  - Filed June 12, 2014**

---

The Petitioner, Guy Graves, appeals from the denial of post-conviction relief by the Madison County Circuit Court.  He was convicted of two counts of burglary and received an effective sentence of twenty-four years in the Tennessee Department of Correction.  On appeal, the Petitioner argues that he received ineffective assistance of counsel.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

J. Colin Morris, Jackson, Tennessee, for the Petitioner-Appellant, Guy Graves.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; James G. Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This court summarized the facts underlying the Petitioner's convictions in its opinion on direct appeal:

> On April 18, 2009, Express Mail Depot and Green Frog Café in Jackson, Tennessee, were burglarized.  Brandy Stewart, the owner of Express Mail Depot, explained that someone used a brick to break the glass door and take a pair of donation jars off the front counter.  The donation jars were for Jackson Downtown Development and a friend who had lost a child.  The jars contained about $150 and were visible from the front window of the business.

Video surveillance of the storefront showed a man breaking into the building and running out.

Adam Kuykendall was employed by the Green Frog Café in April of 2009. The Green Frog Café is located next door to the Express Mail Depot. On April 18, 2009, at around 2:45 a.m., the glass in the front door of the Green Frog Café was broken with a brick. Missing from the business was a donation jar containing about thirty to forty dollars. Mr. Kuykendall saw the surveillance video of the burglary at Green Frog Café and Express Mail Depot on Monday morning. In each video, the perpetrator is seen approaching the building, throwing a brick through a window, entering the building, and leaving with a jar in his hands.

After the burglaries, [the Petitioner] was identified as a suspect from a tip on a crime stoppers telephone call. Eddie McClain, a Jackson Police Department Investigator, noted that the same subject was visible in each video, wearing a distinctive cap. The perpetrator also had a goatee. Investigator McClain photographed [the Petitioner] after taking him into custody. When Investigator McClain first met [the Petitioner], he was wearing "the same hat that was in the [surveillance] video." In addition, [the Petitioner] was also wearing a gray and black jacket.

At the conclusion of the proof, counsel for [the Petitioner] moved for a judgment of acquittal. The trial court granted the motion with respect to Count Three[1] of the indictment. After deliberation, the jury found [the Petitioner] guilty of two counts of burglary.

State v. Guy T. Graves, No. W2010-00984-CCA-R3-CD, 2011 WL 856384, at *1 (Tenn. Crim. App. Mar. 8, 2011), perm. app. denied (Tenn. July 15, 2011).

The trial court sentenced the Petitioner as a Range III, persistent offender to an effective term of twenty-four years' imprisonment for his convictions. This court affirmed his convictions and sentence on direct appeal. Id. On September 1, 2011, the Petitioner filed a timely pro se petition for post-conviction relief, alleging, inter alia, sixteen grounds of ineffective assistance of counsel. The Petitioner was subsequently appointed counsel. The

---

[1] Count Three dealt with the burglary of The Discovery Museum. There was no surveillance video showing this burglary.

post-conviction hearings took place on November 19, 2012, December19, 2012, and January 28, 2013.[2]

**Post-Conviction Hearings.** Trial counsel testified that he was appointed to represent the Petitioner upon his indictment. He recalled that three businesses in downtown Jackson were burglarized and that the Petitioner was charged with three counts of burglary. Trial counsel stated that the Petitioner consistently maintained his innocence and therefore, the Petitioner rejected the State's plea offers. He said that the Petitioner was always cooperative and that they got along throughout the course of the trial. Trial counsel also represented the Petitioner on direct appeal. He said he attempted to fight the case to the fullest.

Trial counsel stated that there had been fingerprints found at one of the businesses but that they did not belong to the Petitioner. He said he discussed the lack of fingerprint evidence with the Petitioner but he did not remember if they discussed calling William Roane of the Jackson Police Department as a fingerprint expert. Trial counsel did not consider calling Roane as a defense witness. He agreed that if Roane had testified, he would have stated that the fingerprints found at the scene did not match those of the Petitioner. He recalled that the jury heard about the lack of fingerprint evidence linking the Petitioner to the crime scene. Trial counsel said it was his strategy to get the fingerprint evidence in through cross-examination of Investigator Eddie McClain. He recalled asking Investigator McClain whether there were any fingerprints found that connected the Petitioner to the burglary.

Trial counsel testified that he was aware that someone named "Cochease" had been identified as a suspect in one of the burglaries, though he could not recall the name of the woman who had identified this individual. Other than Cochease, trial counsel did not know of anyone else who could have been involved in the offenses. He said the name "Vicki Berkshire"[3] sounded "vaguely familiar." He thought that it was the Petitioner who had told him about Vicki Berkshire identifying Cochease as a suspect, though he conceded that the

---

[2] We only address the testimony from the hearings relevant to the disposition of the issues that the Petitioner raised in his appellate brief. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

[3] Upon direct examination, post-conviction counsel directed trial counsel's attention to a police report supplement and read for the record, "Vicki Berkshire, manager of the New Southern Apartments stated that she has a video of the suspect and would contact me when it is ready. She did provide me with three pages with twelve photos of the suspect. Ms. Berkshire stated that she believes the suspect to be a man called Cochease as a suspect." We note that this document was not entered into evidence at the post-conviction hearing and was not included in the appellate record.

information may have been included in the discovery.[4]  Trial counsel was certain that he had reviewed these documents because he read the entire file.  When asked why he had not called Vicki Berkshire to testify, counsel stated, "Well, all I know is that she said she thought that was who it looked like and maybe I should have done that."  He said that the Petitioner may have asked him about this issue even after the trial.

On cross-examination, trial counsel agreed that the State did not allege at trial that the Petitioner's fingerprints were found at the crime scene.  He testified that he and the Petitioner discussed Cochease as a suspect but that he never found a man named Cochease.  He said that the Petitioner did not provide any information about anyone by the name of Cochease.  He agreed that there had been video surveillance from both Express Mail Depot and Green Frog Café that had been played for the jury.  Trial counsel recalled that the videos were in color and that the perpetrator's clothing could be identified.  He agreed that the Petitioner was arrested shortly after the burglaries while dressed in similar clothing.

The Petitioner testified that he was convicted for burglarizing the Green Frog Café and Express Mail.  He denied any involvement in these offenses.  He stated that the surveillance video from the Green Frog Café depicted a man throwing a brick, entering, and then running from the scene "like a track star."  He said he could not have been the perpetrator because he has not been able to run since 1988 due to a physical disability.  The Petitioner said he did not take the State's plea offer because he did not commit the crimes.  He opined that the testimony of both William Roane and Vicki Berkshire would have been essential to his defense.

The Petitioner said he became aware of the lack of incriminating fingerprint evidence when Investigator McClain brought him to the police station to take his fingerprints.  The Petitioner stated that this was the first and last time he ever saw William Roane.  According to the Petitioner, Roane told him, "'Well, we found a partial print at one of the crimes scenes. . . . Considering it being a high traffic area, it would prove who the person that actually touched the counter [was] because the counters were clean except for that one print.'"  After taking his prints, the Petitioner said that Roane told Investigator McClain that the Petitioner was not the perpetrator.  The Petitioner stated that he contacted Roane while he was in prison after obtaining Roane's name as the fingerprint expert from trial counsel.  He said that if Roane had testified, the jury would have heard evidence that the Petitioner's fingerprints were not found at the business.

---

[4] We note that "Vicki Berkshire" is also spelled "Vickie Beshires" elsewhere in the record.  We use the spelling that is reflected in the transcripts.

Regarding the issue of calling Vicki Berkshire to testify, the Petitioner opined that trial counsel "completely failed in his duties" by not calling a potentially exonerating witness. He said that trial counsel never even interviewed Berkshire. He stated that Berkshire would have presented to the jury the fact that she viewed the video surveillance and identified another suspect as the perpetrator.

On cross-examination, the Petitioner testified that the jury heard evidence that there were no prints found at the scene rather than evidence that the Petitioner's prints did not match a fingerprint from the crime scene. He acknowledged that he was acquitted on one count of burglary and he did not know at which business the fingerprint had been found. He stated that he had not seen the indictment in his case or received a copy of it.

The State called the prosecutor as a witness. The prosecutor testified that he tried the Petitioner's case and that a third count for burglary of the Discovery Museum was dismissed. He did not recall that a fingerprint was ever found in any of the businesses. He said that the investigators told the Petitioner they found a fingerprint at the scene so that the Petitioner would offer his prints as a comparison in case they recovered a print later. He said that the State did not present any evidence at trial to link the Petitioner's prints to the crime scenes. The prosecutor recalled that Investigator McClain was asked about fingerprint evidence, and the investigator responded that no fingerprints were found.

The prosecutor testified that the State's "main piece of evidence" was the video surveillance from outside the businesses, both of which were located in the New Southern Hotel in downtown Jackson. He said that the videos were not high definition, "but you could tell it was a short white male with facial hair who had a NAPA hat on." He stated that the two burglaries occurred on the same night and that in both instances, the same individual threw a brick "like a pitcher." He recalled that the Petitioner was identified as the perpetrator based on a Crime Stoppers tip and that when investigators made contact with the Petitioner, he was wearing the same gray jacket and NAPA hat as the person in the videos. The prosecutor said that the jury heard this evidence and viewed the surveillance videos before finding the Petitioner guilty of the burglaries. When asked if he recalled a person named Cochease, the prosecutor responded:

> I think [trial counsel] asked witnesses about that. . . , but nobody ever identified who that person was and it was never stated that it could be [the Petitioner] or it could not. That person was never definitively identified.

On cross-examination, the prosecutor testified that he did not call William Roane as a State's witness because there was no fingerprint evidence and because Roane "would basically be testifying to nothing." On the issue of Vicki Berkshire, the prosecutor stated:

-5-

She was mentioned in the police report, but other than that it was just a passing reference to her. I think she had something to do with the New Southern building itself. She had nothing to do with neither [sic] business in particular, but with the building.

At the conclusion of the hearings, the post-conviction court took the matter under advisement. On June 19, 2013, the court entered a written order denying relief. The written order incorporated the post-conviction court's May 23, 2013 letter which outlined the court's ruling. The Petitioner now timely appeals the court's denial of post-conviction relief.

## ANALYSIS

On appeal, the Petitioner contends that trial counsel was ineffective for failing to call William Roane and Vicki Berkshire as defense witnesses. Specifically, he asserts that Roane would have provided expert testimony that the Petitioner's fingerprints were not found at the crime scenes. He further argues that Vicki Berkshire would have testified that she identified the perpetrator in the surveillance video to be a man named Cochease. The Petitioner maintains that both witnesses would have strongly benefitted his defense. The State responds that the Petitioner failed to establish that counsel's performance was deficient or that any alleged errors prejudiced the defense. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the

conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotation marks and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. "In reviewing

counsel's conduct, we must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). However, this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

In denying the Petitioner his requested relief, the post-conviction court found that the Petitioner failed to establish either deficiency or prejudice based on counsel's performance. After carefully reviewing the petition, the testimony at the evidentiary hearings, the trial transcript, and all the evidence in the case, the post-conviction court concluded that the Petitioner did not prove his allegations by clear and convincing evidence. The court noted that the identification of a defendant as the perpetrator is a question of fact for the jury to determine. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The court once again reviewed the video evidence presented at trial and approved the jury's guilty verdict for a second time. On the specific issue of trial counsel's failure to call William Roane or Vicki Berkshire as defense witnesses, the post-conviction court found that neither witness would have benefitted the defense. Accordingly, the court denied the petition because the Petitioner failed to meet his burden of proof.

After a thorough review of the record, we agree with the post-conviction court that the Petitioner has failed to prove that he received ineffective assistance of counsel. The Petitioner has made an insufficient showing that he suffered prejudice due to counsel's alleged deficiencies. See Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Although he argues that the testimony of William Roane and Vicki Berkshire would have aided his defense, the Petitioner did not call Roane or Berkshire to testify at the post-conviction hearing. This court has previously concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). To establish prejudice, the petitioner must also elicit favorable and material testimony from the witness. See Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black, 794 S.W.2d at 757). "'As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.'" Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (quoting Black, 794 S.W.2d at 757). Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Black, 794 S.W.2d at 757.

At the post-conviction hearing, the prosecutor testified that the State did not present any fingerprint evidence at trial and that Roane "would basically be testifying to nothing." Trial counsel agreed that the State did not allege at trial that the Petitioner's prints were found at the crime scene. Trial counsel stated that it was his strategy to present the lack of fingerprint evidence to the jury through cross-examination of Investigator McClain. While the Petitioner asserts that Roane discovered a fingerprint at one of the businesses that did not match the Petitioner's print, we cannot speculate as to this claim because Roane did not testify at the evidentiary hearing.

Likewise, we also cannot speculate as to the testimony of Vicki Berkshire. Although the Petitioner contends on appeal that trial counsel was ineffective in failing to call Berkshire, the Petitioner has not shown how this witness would have been material or favorable to his defense. In his brief, the Petitioner maintains that Berkshire would have identified the perpetrator in the surveillance video to be a man named Cochease, thereby calling into question the Petitioner's involvement in the burglaries. At the post-conviction hearing, trial counsel testified that he recalled discussing the matter of Cochease with the Petitioner, but that a man named Cochease was never located. The prosecutor testified that trial counsel cross-examined witnesses about Cochease but that the suspect "was never definitively identified." The prosecutor further stated that Vicki Berkshire was mentioned as a passing reference in a police report but that she was not related to the burglarized businesses apart from being the building manager. Although post-conviction counsel questioned trial counsel about the police report that mentioned Berkshire, this document was not entered into evidence at the hearing or included in the appellate record.

We agree with the post-conviction court's determination that the Petitioner has failed to demonstrate either deficient performance or a reasonable probability that the outcome at trial would have been different if trial counsel had called Roane and Berkshire as defense witnesses. Based on the record, we cannot conclude that the verdict in the Petitioner's trial was undermined or that the proceedings were fundamentally unfair due to counsel's alleged error. See Strickland, 466 U.S. at 670 ("[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."). Accordingly, the Petitioner has failed to meet his burden of proof in establishing his post-conviction claim, and he is not entitled to relief.

**CONCLUSION**

Based on the foregoing authorities and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE